IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| TAHINA CORCORAN,           ) | | |
|     as Next Friend on behalf of   ) | | |
|     Joseph E. Corcoran           ) | | |
|         Petitioner,              ) | | |
| ) | | |
| v.                          ) | Case No. 24-970 | |
| ) | | |
| RON NEAL, Warden            ) | DEATH PENALTY CASE | |
| ) | **EXECUTION SCHEDULED** | |
|         Respondent.              ) | **DECEMBER 18, 2024,** | |
| ) | **BEFORE THE HOUR OF SUNRISE** | |

### Motion for Stay of Execution

Now comes next friend petitioner Tahina Corcoran, by and through counsel, and prays the Court for a stay of execution for Joseph E. Corcoran, now scheduled for December 18, 2024, before the hour of sunrise, pending this Court's hearing and determination of his claim that he is incompetent to be executed, for the following reasons.

Every day, Mr. Corcoran is tormented by the guards at the Indiana State Prison. The guards use an ultrasound machine they keep somewhere in the prison to send out ultrasonic waves that torture Mr. Corcoran, telling him what to do and inflicting excruciating pain. He suffers from a sleep and speech disorder which makes him involuntarily talk out loud and reveal his innermost thoughts. People retaliate against him when they hear his private thoughts. He can hear them talking about him through the walls of his prison cell. The torture and the disorder have plagued Mr. Corcoran for the better part of three decades. He attested he wants to escape prison and this torture.

Of course, these are all delusions. There is no such ultrasound machine, the prison guards are almost certainly not using a machine to torture him with ultrasonic waves, there is no evidence Mr. Corcoran suffers from a sleep or speech disorder, and dating back until his childhood, Mr.

1

Corcoran has heard conversations around him that do not exist. But to him, these things are all very real. He is desperate for them to stop though, and he believes the only way they will stop is if he is executed.

In other words, Mr. Corcoran seeks to be executed—in fact, he is eager to be executed—because he sees it as his escape from the guards' ultrasonic torture and his disorder. It is an irrational belief, and it is one that has infiltrated every part of his life. It even pervaded his trial, where he rejected a life plea offer because the State would not acquiesce to his demands and sever his vocal cords so that his disorder could not force him to broadcast his thoughts.

Mr. Corcoran's reality, which is not reality at all, demonstrates his psychotic and fixed belief systems.

Over the course of two decades, at least five mental health professionals, including three psychiatrists, a neuropsychologist, and a clinical psychologist, have diagnosed Mr. Corcoran with paranoid schizophrenia. Even more professionals have diagnosed him with a myriad of other mental illnesses ranging from schizotypal personality disorder to major depression. Despite spending most of his adult life in the Indiana Department of Correction system, Mr. Corcoran's schizophrenia resisted the Department's minimal treatment efforts via medication, and thus remains untreated and totally uncured.

Mr. Corcoran's schizophrenia manifests in auditory hallucinations and painful, frightening delusions. As he did on the day of the crime in 1997, Mr. Corcoran believes he can hear people talking about him through the walls. Two persistent delusions inflict torment upon him on a daily basis: that prison guards are using a ultrasound machine to torture him with ultrasonic waves,[1] and

---

[1] The delusion regarding the ultrasound machine is well-documented, even from the time of trial in 1999. That delusion continues to this day, as evidenced by Mr. Corcoran's September 2024 self-published book, *A Whistle-blower Report: Electronic Harassment* (Attachment H). The book

2

that he suffers from a speech and sleep disorder that broadcasts his innermost thoughts and causes him to say inappropriate things for which people retaliate against him. Mr. Corcoran's entire perception of the world and of his life is centered around the humiliation and agony he believes he is wracked by. He has no grasp on true reality—to him, the pain of the ultrasound waves and the disorder are reality. Every decision he has made in this case, including that he wants to be executed, is rooted in his desire to escape the pain of his delusions. His eagerness to be executed is because he sees it as the opportunity to avoid further pain; he does not view it as punishment. This is not a rational decision, and it did not involve rational thinking.

Mrs. Corcoran, his wife, as next friend petitioner, has concurrently filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, contending that he is incompetent to be executed and challenging the Indiana Supreme Court's sharply divided 3-2 denial of his request to file a petition for successive post-conviction relief pursuant to Indiana Post-Conviction Rule 1. *Corcoran v. State*, Case No. 24S-SD-222 (Opinion dated 12/10/2024) (Attachment L). The petition establishes that the Eighth Amendment bars the execution of someone who lacks a rational understanding of the reason for his execution, like Mr. Corcoran. *Madison v. Alabama*, 586 U.S. 265, 283 (2019); *Panetti v. Quarterman*, 551 U.S. 930, 959-60 (2007); *Ford v. Wainwright*, 477 U.S. 399, 417 (1985). At minimum, the petition presents a colorable, non-frivolous claim that Mr. Corcoran does not rationally understand the reasons for his execution, and instead irrationally believes that rather than a punishment, the execution is an opportunity to be rid of the pain from the ultrasound machine and sleep and speech disorders. The petition contends that the Indiana Supreme Court's decision denying permission to file his *Ford* claim in the Allen County Superior

---

details how the ultrasound machine supposedly works and chronicles how it has been used to torture a specific, targeted population.

Court was contrary to clearly established federal law and was based on an unreasonable determination of the facts in light of the evidence. Mr. Corcoran's petition requests that this Court grant an evidentiary hearing to determine whether he is incompetent to be executed under *Ford*, *Panetti*, and *Madison.*

Under 28 U.S.C. § 2251(a)(1), with a pending petition for writ of habeas corpus, this Court can issue a stay of execution. *McFarland v. Scott*, 512 U.S. 849, 858 (1994); 28 U.S.C. § 1651(a) (this Court may issue "all writs necessary" to preserve its jurisdiction over the newly ripened habeas petition). A stay of execution should be granted when a § 2254 petition has been timely filed and when the amount of time between the filing of the petition and the scheduled execution does not allow for the merits of the petition to be fully and satisfactorily considered. *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996) (a district court "is obligated to address the merits and must issue a stay to prevent the case from becoming moot" if the petition is not able to be properly dismissed *on the merits* before the scheduled execution); *see also McFarland*, 512 U.S. at 858.

This incompetency claim was not ripe until the Indiana Supreme Court set his execution date on September 11, 2024. *See, e.g., Stewart v. Martinez-Villareal*, 523 U.S. 637, 643 (1998); *Panetti*, 551 U.S. at 946-47; *Holmes v. Neal*, 816 F.3d 949, 954 (7th Cir. 2016). Mr. Corcoran on November 15, 2024, pursuant to Indiana Post-Conviction Rule 1; *Baird v. State*, 833 N.E.2d 28, 30 (Ind. 2005); and *Timberlake v. State*, 858 N.E.2d 625, 627 (Ind. 2006), requested the Indiana Supreme Court's permission to file a successive petition for post-conviction relief in the Allen County Superior Court and attached a proposed petition regarding his incompetence to be executed. *Corcoran v. State*, Case No. 24S-SD-222. He concurrently filed a motion for a stay of execution in the Indiana Supreme Court. *Id.*

By the barest of majorities, 3-2, the Indiana Supreme Court issued an order denying Mr.

Corcoran's request without a hearing or oral argument and denied the stay of execution on December 5, 2024. Attachment G. The denial Order promised Opinions in short order. Five days later, on December 10, 2024, the Indiana Supreme Court issued its opinions. *See Corcoran v. State*, Case No. 24S-SD-222, 2024 WL 5052384 (Ind. Dec. 10, 20204). Attachment L.

Mr. Corcoran has timely filed the instant motion for a stay of execution and the concurrent petition for writ of habeas corpus under 28 U.S.C. § 2254. Moreover, because Mr. Corcoran meets the "substantial threshold showing of insanity" required by *Panetti* and is therefore entitled to a fair hearing on his incompetency claim, Mr. Corcoran's petition cannot adequately be decided on its merits in the less than one week before his scheduled December 18, 2024 execution.

### I. This Court must stay Mr. Corcoran's execution to adequately determine the merits of Mr. Corcoran's timely filed incompetency to be executed claim.

The issues raised in Mr. Corcoran's concurrently filed next-friend petition for habeas corpus have been newly decided by the Indiana Supreme Court and were not ripe until the execution warrant was issued. It is a well-settled matter of law that the next-friend habeas petition addressing the *Ford* claim issue is not a second or successive request for relief but rather **it must be treated as a first habeas petition**. *Panetti*, 551 U.S. at 942; *Martinez-Villareal*, 523 U.S. at 641-46; *Holmes*, 816 F.3d at 954; *see also Fulks v. Watson*, 4 F.4th 685, 594 (7th Cir. 2021).

As such, this Court must grant a stay of execution to address the petition on the merits, which cannot be sufficiently completed before the scheduled execution on December 18, 2024. *Lonchar*, 517 U.S. at 320; *see also Barefoot v. Estelle*, 463 U.S. 880, 888-89 (1983) (federal courts "need not, and should not, . . . fail to give non-frivolous claims of constitutional error the careful attention that they deserve" and when the court is "unable to resolve the merits . . . before the scheduled date of execution, the petitioner is entitled to a stay of execution to permit due consideration of the merits."). Even more compelling than *Lonchar*'s case, which involved a stay

5

of execution pending a first habeas petition, this petition is not delayed—it was presented as soon as practicable, the day after the newly ripened issue could be presented in federal court.

The "critical question" in determining whether a court may dismiss a petition on the merits making a stay unnecessary, *cf. Lonchar*, 517 U.S. at 320, is whether the claims are "patently frivolous or false." *Blackledge v. Allison*, 431 U.S. 63, 76 (1977). The current claim that Mr. Corcoran is incompetent to be executed due to his severe schizophrenia and inability to rationally understand is hardly frivolous or false. Indeed, two Justices of the Indiana Supreme Court in the past few days agree. Recent evidence, as detailed in the petition, regarding Mr. Corcoran's reports to the prison staff of torture from an ultrasound machine and his published book chronicling his tormented experience with the machine, clearly establishes that his mental illness disconnects him from reality and supports the non-frivolous conclusion of two Justices of the Indiana Supreme Court.

Further, the majority's insistence on relying on its prior determinations regarding Mr. Corcoran's competency *support* a finding by this Court that he has now met the non-frivolous threshold showing because the Indiana Supreme Court previously acknowledged that Mr. Corcoran suffered from psychosis, but at the time of its review, found his symptoms were at well managed by medication. *See Corcoran v. State*, 820 N.E.2d 655, 660 (Ind. 2005), *aff'd on reh'g*, 827 N.E.2d 542 (Ind. 2005) ("Corcoran's prison medical records and the testimony of each expert indicated that his psychotic symptoms were being controlled through various psychiatric medications."). But now, the majority ruled without evidence concerning Mr. Corcoran's current psychiatric medication, or lack thereof, and did not give Mr. Corcoran the opportunity to present such evidence to the Allen County Superior Court. Even more dramatically, the majority continuously noted that the new evidence of the book Mr. Corcoran wrote describing many of his

fixed delusions was not significant because it shows nothing has changed – which implicitly undermines the earlier finding that medications control the delusions. Thus, the majority's new analysis undermines the previous analysis, and in fact supports Seventh Circuit Justice Williams' 2008 dissent. *Corcoran v. Buss*, 551 F.3d 703, 716 (7th Cir. 2008) (Williams, J., concurring in part and dissenting in part).

Regardless, the majority premises its denial with the understanding that Mr. Corcoran is extremely mentally ill and that every expert to testify on competency has said he was irrational and incompetent. Under *Panetti*, recognizing that a person has a psychotic disorder is the beginning of doubt about competence and the Indiana Supreme Court recognized Mr. Corcoran's mental illness in 2005 and last week. *See* 551 U.S. at 960.

Over the course of two decades, multiple mental health professionals from various disciplines have determined that Mr. Corcoran's mental illness places him in a totally different reality so that he cannot make rational decisions or assist in his own defense to save his life.

| **Expert** | **Field of Expertise** | **Diagnosis** | **Opinion** |
|---|---|---|---|
| Dr. Philip Coons | Psychiatrist | Schizophrenia | Incompetent at time of trial. |
| Dr. Larry Davis | Psychiatrist | Schizophrenia | Incompetent at time of trial. |
| Dr. Edmund Haskins | Neuropsychologist | Schizophrenia | Incompetent to waive post-conviction. |
| Dr. Robert Kaplan | Clinical Psychologist | Schizophrenia | Incompetent to waive post-conviction. |
| Dr. George Parker | Forensic Psychiatrist | Schizophrenia | Incompetent to waive post-conviction. |

Equally significant, several judges previously reviewing Mr. Corcoran's case, including an Indiana Supreme Court Justice and a Seventh Circuit Court of Appeal's Judge, have noted Mr. Corcoran's paranoid schizophrenia and delusions and opined that he is incompetent to make legal decisions regarding his case. *Corcoran v. State*, 820 N.E.2d 655, 665 (Ind. 2005) (Rucker, J.,

dissenting) ("I believe Corcoran is not competent to waive his right of post-conviction review . . . Corcoran is seriously mentally ill. And how does his mental illness manifest itself? Corcoran is under the paranoid delusion that prison guards are torturing him with sound waves."); *Corcoran*, 551 F.3d at 714-15 (Williams, J., concurring in part and dissenting in part) ("I disagree with my colleagues' conclusion that Corcoran was competent to waive postconviction review. No one contests that Corcoran suffers from a mental illness. This is clear from his delusion that prison guards torture him daily with an ultrasound machine, his conversations with individuals who are not there, and his delusion that he suffers from an involuntary speech disorder. . . . I believe the Indiana court's decision finding wavier under these circumstances was unreasonable error."). This is not a frivolous or patently false opinion.

Chief Justice Rush and Justice Goff, dissented, which also demonstrates the *Ford* claim is not frivolous or patently false. Focusing on the evidence required to meet threshold showing required for an evidentiary hearing, the dissenting judges wrote:

> The evidence submitted by Corcoran's attorney's reveals a documented history of severe mental illness, an inability to cooperate with counsel, and a desire to be executed to escape prison – all of which raise substantial questions about his current mental capacity. As a result, we should stay Corcoran's execution to allow his attorneys to seek successive post-conviction relief to litigate his competency. But at a minimum, we should stay Corcoran's execution and order a psychiatric examination.

Attachment L at 239a (*Corcoran,* 2024 WL 5052384, *15 (Goff, J., dissenting)). The dissenting judges emphasized that throughout Mr. Corcoran's capital proceedings "at least five different medical experts have found him incompetent" and "to ignore these findings now and proceed with an execution without a current competency evaluation amounts to enabling [Mr. Corcoran's] delusions – a state sanctioned escape from suffering rather a measured act of justice." *Id.*

The decision to deny Mr. Corcoran further review was a divisively close case with a razor-

thin majority margin. This clearly establishes that the incompetency claim is not frivolous, and indeed, warrants fair grounds for litigation. That two of the justices—40% of the court, who are unquestionably reasonable jurists—found the evidence supporting the *Ford* claim to satisfy the substantial threshold showing so as to call for an evidentiary hearing demonstrates that there remains a serious question as to Mr. Corcoran's incompetence, and that there is a substantial likelihood of success. *Cf. Jones v. Basinger*, 653 F.3d 1030 (7th Cir. 2011) ("When a state appellate court is divided on the merits of the constitutional question, issuance of a certificate of appealability should ordinarily be routine."); *Biden v. Nebraska*, 600 U.S. 477, 507 (2023) (Reasonable minds may disagree with our analysis—in fact, at least three do.").

Thus, the Court cannot now dismiss the petition, but rather must grant a stay of execution to allow for further adjudicative review to assess whether Mr. Corcoran is incompetent to be executed under *Ford* and *Panetti*. The evidence of Mr. Corcoran's paranoid schizophrenia and his inability to rationally understand reality satisfy the requisite substantial threshold showing, entitling him to an evidentiary hearing in this Court.

**II.     Under the more strenuous stay standard, this Court must still grant a stay of execution.**

Even under the more strenuous stay standard, this Court must grant the stay of execution. Considerations under the stay standard include "the likelihood of success on the merits, the relative harm to the parties, and the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004). All the factors weigh in favor of granting Mrs. Corcoran's motion for a stay of execution for Mr. Corcoran.

**A. Mr. Corcoran is likely to succeed on the merits of his incompetency to be executed claim.**

Regarding the likelihood of success on the merits, the Court is respectfully referred to the

concurrently filed petition for writ of habeas corpus. As explained in the petition, Mrs. Corcoran presents to this Court a fully exhausted claim regarding Mr. Corcoran's incompetence to be executed. The opinion of the Indiana Supreme Court is contrary to clearly established federal law and an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

As detailed in the petition, Mr. Corcoran does not have a rational understanding of the reason for his execution. *See Madison*, 586 U.S. at 283; *Panetti*, 551 U.S. at 959-60; *Ford*, 477 U.S. at 417. Mr. Corcoran does not have the ability to rationally understand the world around him—his paranoid schizophrenia and the delusions it causes create a totally different reality for him. While the reason for his execution is that a jury found him guilty of four counts of murder, he truly views his execution as an assisted suicide, and not as punishment, because his execution will allow him to escape prison and the delusions he suffers there.

And although Mr. Corcoran can parrot that the reason the State seeks to execute him is because he was found guilty of murder, he has not internalized this reason nor does he fully believe this reason to be true, as evidenced by recent prison staff notes and his book describing how he is tormented on a regular basis. *See Panetti*, 551 U.S. at 959. In short, like the petitioners in *Panetti* and *Madison*, the evidence of Mr. Corcoran's schizophrenic delusions meets the substantial threshold showing of his incompetence for execution and is likely to succeed on the merits of his claim.

It is significant that the very state procedure that precluded the Allen Superior Court from hearing evidence on Mr. Corcoran's *Ford* claim is a procedure wholly inconsistent with federal law (and the law of every other state that actively carries out executions). It is well-settled that a habeas petition raising a *Ford* claim is not a second or successive habeas petition requiring a higher court's permission to file, but a first habeas petition because the *Ford* issue is not ripe until an

execution date is set. *Panetti*, 551 U.S. at 942; *Martinez-Villareal*, 523 U.S. at 641-46; *Holmes*, 816 F.3d at 954; *see also Fulks,* 4 F.4th at 594. Yet, under Indiana law, a *Ford* claim is considered a successive habeas petition and before it can be filed in superior court, the Indiana Supreme Court must grant permission. *See* Indiana Post-Conviction Rule 1; *Baird*, 833 N.E.2d at 30; and *Timberlake*, 858 N.E.2d at 627. Arguably, the Indiana Supreme Court's decision should be afforded no deference because it is the result of a gate-keeping function wholly inconsistent with federal law and is the result of an opinion without even an opportunity to present countervailing evidence.

The decision to deny Mr. Corcoran further review was a divisively close case with a razor-thin majority margin. Again, two of the justices—40% of the court, who are unquestionably reasonable jurists—found the evidence supporting the *Ford* claim to satisfy the substantial threshold showing so as to call for an evaluation and further proceedings.

The evidence of Mr. Corcoran's paranoid schizophrenia and his debilitating delusions and hallucinations shows that he cannot engage in rational thinking and does not rationally understand the reason for his impending execution. Mrs. Corcoran is substantially likely to succeed on her claim that Mr. Corcoran is incompetent to be executed.

### B. This incompetency claim is not delayed.

Next friend petitioner, Mrs. Corcoran, timely files this petition and motion for stay of execution. This *Ford* claim became ripe only after the Indiana Supreme Court set the execution date on September 11, 2024. *See, e.g., Martinez-Villareal*, 523 U.S. at 644-45; *Holmes*, 816 F.3d at 954; *Fulks*, 4 F.4th at 594. Mr. Corcoran filed the request to file his successive petition for post-conviction relief regarding this claim in the Indiana Supreme Court thereafter. The Indiana Supreme Court denied permission to file for post-conviction relief on December 5, 2024, and

issued its opinion on December 10, 2024. Petitioner now pursues his claim this court just one day after that decision.

The proposed successive petition for post-conviction relief filed in the Indiana Supreme Court included extensive evidence of incompetence, including evidence gathered after the Indiana Supreme Court scheduled his execution. Additionally, even after Mr. Corcoran's legal team requested *all* prison records for 10 months beginning in February 2024, and diligently and repeatedly followed-up on that request on a near-weekly basis, the Department of Correction failed to turn over years' worth of Mr. Corcoran's records until December 2, 2024, when counsel received the complete set of records. Nevertheless, despite waiting on several years' worth of records, Mr. Corcoran's counsel filed its petition in the Indiana Supreme Court in the name of expediency.

Mr. Corcoran has been diligent and there has been no delay in bringing this claim.

### C. If the execution proceeds on December 18, 2024, Mr. Corcoran will have suffered irreparable harm in violation of his Eighth Amendment right to be free of cruel and unusual punishment and his Fourteenth Amendment right to due process.

As to the issue of relative harm, execution is, by its very nature, irreparable harm. *See, e.g., Wainwright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell, J., concurring) (recognizing that irreparable harm "is necessarily present in capital cases"). Mr. Corcoran faces the irreparable harm of being put to death, and the irreparable harm of being put to death in violation of his right to be free of cruel and unusual punishment under the Eighth Amendment and his right to due process under the Fourteenth Amendment. *See Back v. Bayh*, 933 F. Supp. 738, 754 (N.D. Ind. 1996) ("When violations of constitutional rights are alleged, further showing of irreparable injury may not be required if what is at stake is not monetary damages. This rule is based on the belief that equal protection rights are so fundamental to our society that any violation of those rights causes irreparable harm."); *Bevis v. City of Naperville*, 85 F.4th 1175, 1219 (7th Cir. 2023) ("[A]n alleged

12

constitutional violation often constitutes irreparable harm."); *see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (3d ed. 2022) ("When an alleged deprivation of a constitutional right is involved . . . most courts hold that no further showing of irreparable injury is necessary."); *Cohen v. Coahoma Cnty., Miss.*, 805 F. Supp. 398, 406 (N.D. Miss. 1992) ("It has been repeatedly recognized by federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law.").

The State's interest in executing Mr. Corcoran must give way to Mr. Corcoran's interest in being executed only when competent, and to all parties' interest in a full determination of this issue. As the Supreme Court has made clear, once a petitioner makes a substantial threshold showing of incompetence, the Constitution entitles him to "a 'fair hearing' in accord with fundamental fairness." *Panetti*, 551 U.S. at 949 (citing *Ford*, 477 U.S. at 424, 426). Carrying out Mr. Corcoran's execution without affording him a fundamentally fair opportunity to prove his incompetency would violate *Ford* and *Panetti* and the Due Process Clause of the Fourteenth Amendment. *See id.* Furthermore, because Mr. Corcoran does not have a rational understanding of the basis for this execution, the State's plan to execute him subjects him to cruel and unusual punishment and an unreliable sentence in violation of the Eighth Amendment. *Madison*, 586 U.S. at 283; *Panetti*, 551 U.S. at 959-60; *Ford*, 477 U.S. at 409-10, 417. This Court must accord Mr. Corcoran an opportunity to be heard and stay his execution to provide a "fair hearing" in accord with fundamental fairness. *Panetti*, 551 U.S. at 949.

The State's insistence on enforcing Mr. Corcoran's death sentence in the absence of a full and fair hearing unquestionably violates his constitutional right to due process, and because Mr. Corcoran in fact does not have a rational understanding of the basis for this execution, his execution despite his incompetency will subject him to cruel and unusual punishment in violation

13

of the Eighth Amendment. Without this Court's intervention, Mr. Corcoran will be executed even though he is incompetent and before this incompetency claim can be fully litigated, contrary to the tenets and principles of the Constitution and the mandates of the Supreme Court.

The State will incur no injury for not getting to execute Mr. Corcoran during the Advent season, a mere week before the celebration of Christmas. Instead, the State should only have an interest in constitutional executions occurring—and here there is a colorable, non-frivolous claim Mr. Corcoran is incompetent to be executed.

## CONCLUSION

For the foregoing reasons, Mrs. Corcoran prays this Court for a stay of execution to fully and fairly litigate Mr. Corcoran's claim that he is incompetent to be executed because he does not have a rational understanding of the reason for his execution. Mrs. Corcoran further requests this Court grant any other relief it deems just.

Respectfully submitted,

*/s/ Laurence E. Komp*
LAURENCE E. KOMP, MO. Bar #40446
FAITH J. TAN, IL. Bar #6342729
MICHELLE M. LAW, MO. Bar #45487
Capital Habeas Unit
Federal Public Defender
Western District of Missouri
1000 Walnut St., Ste. 600
Kansas City, MO  64106
(816) 675-0923
laurence_komp@fd.org
faith_tan@fd.org
michelle_law@fd.org

*Attorneys for Petitioner*

14

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2024, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system and sent it via email to Tyler Banks, Office of Indiana Attorney General, at Tyler.Banks@atg.in.gov.

/s/ Laurence E. Komp
*Laurence E. Komp*